2016 IL App (1st) 142853

FOURTH DIVISION
May 12, 2016

No. 1-14-2853

| | | |
|---|---|---|
| MANDA TANIA TRUTIN | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee and Cross-Appellant, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 13 M1 127786 |
| IULIAN ADAM and AMANDA SCHMICKER, | ) | |
| | ) | Honorable |
| Defendants-Appellants and Cross-Appellees. | ) | Israel A. Desierto, |
| | ) | Judge Presiding. |

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal arises from a landlord-tenant dispute brought under the Chicago Residential Landlord and Tenant Ordinance (RLTO). The tenant, the plaintiff in this action, prevailed at trial and was awarded attorney fees and costs as a "prevailing plaintiff" under the RLTO. The landlords later brought a postjudgment petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)), which the tenant opposed and the circuit court denied. The question presented is whether, under the RLTO, the tenant is entitled to fees and costs for successfully opposing that postjudgment petition in the circuit court. We hold that she is.

¶ 2                                    I. BACKGROUND

¶ 3    Manda Tania Trutin (Manda) entered into a residential lease with Iulian Gabriel Adam and Amanda Schmicker (the landlords) in the city of Chicago for the lease period beginning July 24, 2011 and ending July 31, 2012. The security deposit for the lease was $850. After vacating the unit, the landlords sent Manda both a check for $450 and a notice clarifying the reasons for

deducting $400 from the security deposit: picture holes or gouges to walls ($200); paint and supplies ($100); and cleaning services ($100). Manda filed suit seeking to enforce various provisions of the RLTO, alleging a failure to pay the security deposit interest, failure to timely return the security deposit with interest, failure to disclose the financial institution holding plaintiff's security deposit, commingling of security deposit with landlord assets, and failure to provide a current RLTO summary.

¶ 4 On February 5, 2014, the trial court entered judgment in favor of Manda and awarded her attorney fees and court costs pursuant to the RLTO.

¶ 5                              A. The Original "Motion to Vacate"

¶ 6 On April 9, 2014, the landlords filed a pleading styled a "motion to vacate" the trial court's February 5 ruling. That motion did not specify the statute under which it was brought. No affidavit was attached to it. And it was obviously filed well beyond 30 days from the final judgment.

¶ 7 Manda filed a response in opposition. She argued that the circuit court had no jurisdiction over a posttrial motion filed more than 30 days after the final judgment, and the "motion to vacate" could not be deemed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)), as it was not styled as such and did not attach any affidavits as required by that statute.

¶ 8 Manda also filed a supplemental petition for attorney fees and costs pursuant to the RLTO for the effort expended in litigating the postjudgment "motion to vacate."

¶ 9 On May 20, 2014, the trial court denied the "motion to vacate" based on lack of jurisdiction, as it was not filed within 30 days of the final judgment. The trial court's order was silent on the request for attorney fees.

¶ 10    In her brief, Manda claims that the trial court denied her supplemental fee petition because it lacked jurisdiction over that fee petition, just as it lacked jurisdiction over the "motion to vacate" in the first instance. But we have no transcript of that proceeding or any bystander's report or stipulation and, as we have noted, the order is silent on the petition for attorney fees.

¶ 11    In any event, neither party appealed the trial court's May 20 order.

¶ 12                              B. The Section 2-1401 Petition

¶ 13    About a month later, on June 20, 2014, the landlords filed a section 2-1401 petition for relief from judgment, seeking to vacate the circuit court's judgment in favor of Manda based on what they deemed newly-discovered evidence that would entitle them to post-judgment relief. On August 6, 2014, after a hearing on the matter, the trial court denied the section 2-1401 petition as well. After the trial court announced its ruling in open court, Manda's counsel made an oral request for attorney fees and costs:

> "COUNSEL:  Since this is a matter under the RLTO, we are entitled to file a fee petition. I would like to get it—rather than have to appear another time, I would like to set a briefing schedule.
>
> THE COURT: I have denied their petition.  The judgment that was previously entered stands.
>
> COUNSEL:   No.  No.  I am sorry, [Y]our Honor, I am the prevailing party on the—
>
> THE COURT: And judgment was granted on your behalf, correct?
>
> COUNSEL:  Correct.
>
> THE COURT: And an award has already been given, correct?
>
> COUNSEL:  Yes.

THE COURT: You are asking me for additional attorney's fees based on this 1401 petition?

COUNSEL: On responding to this, yes.

THE COURT: Respectfully, and if you wish, the court reporter is here, I believe that the judgment that was previously entered will stand.

COUNSEL: Okay. You will not entertain any further fee petition, is that correct?

THE COURT: At this time, no."

¶ 14    The order entered on August 6, 2014 reflected that the court denied both the landlords' section 2-1401 petition and Manda's request for attorney fees and costs.

¶ 15                                    C. The Appeal

¶ 16    On September 5, 2014, the landlords filed a notice of appeal of the August 6, 2014 order denying their section 2-1401 petition. On September 15, 2014, Manda filed a notice of cross-appeal. In explaining the relief sought in her cross-appeal, Manda wrote: "Reverse the portion of the order of 8/6/14 denying cross-appellant the right to file a petition for attorney's fees pursuant to the [RLTO] and remand the case to allow the filing of a fee petition and further proceedings thereon; attorney's fees and costs for appeal pursuant to [the RLTO]."

¶ 17    The landlords failed to prosecute their appeal, and we dismissed it for want of prosecution. The only matter before us is the cross-appeal regarding attorney fees.

¶ 18                                    II. ANALYSIS

¶ 19    The landlords failed to file a brief on this cross-appeal brought by Manda. We are not compelled to serve as an advocate for the appellee landlords, but we may choose to consider the merits of the appeal where the record is simple, and we can resolve the dispute without the benefit of an appellee's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). We will do so in this case.

¶ 20                                    A. Jurisdiction

¶ 21    It is always our duty to consider our own jurisdiction, even if the question is not raised by the parties. *Uesco Industries, Inc. v. Poolman of Wisconsin, Inc.*, 2013 IL App (1st) 112566, ¶ 73. The jurisdictional question is noteworthy here because Manda appears to be seeking attorney fees and costs resulting from her efforts in opposing two different posttrial actions. In her brief, Manda seeks "attorney's fees and costs to which [she] is entitled as the prevailing tenant *** in opposing the landlords' *attempts* to vacate the judgment in her favor." (Emphasis added.) Her use of the plural, as well as the argument she makes in her brief, indicate that she is attempting to secure attorney fees arising out of both attempts to overturn her trial victory—(1) the initial "motion to vacate" denied on May 20, 2014, and (2) the subsequent section 2-1401 petition denied on August 6, 2014. We must determine our jurisdiction to hear each of these rulings independently.[1]

¶ 22    Taking the second circuit court ruling first, Manda's notice of cross-appeal indicates that the only order from which she is appealing is the circuit court's August 6, 2014 order, which denied the landlords' section 2-1401 petition and denied Manda's request to file a fee petition for costs incurred in opposing that petition. Under Illinois Supreme Court Rule 303(a)(3) (eff. May 30, 2008), a notice of cross-appeal is timely filed if, among other reasons, it is filed within 10 days of receipt of notice of a timely filed notice of appeal by another party. *Id*. Here, the landlords filed a timely notice of appeal from the August 6 order by filing it on September 5, 2014, within 30 days of the final order. See Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008). Manda then filed her notice of cross-appeal 10 days later, on September 15, 2014. We thus have jurisdiction over the August 6 order's denial of attorney fees pursuant to Rule 303(a)(3).

---

[1] Manda also requests attorney fees and costs for litigating this cross-appeal. We will take up that question as well.

¶ 23    It makes no difference that, ultimately, the landlords failed to prosecute their appeal. Once Manda's cross-appeal was timely filed, entitling her to appellate jurisdiction, her cross-appeal stood on its own. *Sampson v. Eastman Kodak Co.*, 195 Ill. App. 3d 715, 721 (1990) (cross-appeal is not dependent on viability of initial appeal).

¶ 24    But we do not have jurisdiction to review the propriety of any fee petition relating to the earlier postjudgment motion, the "motion to vacate" that the trial court denied on May 20, 2014. The notice of cross-appeal was limited to the August 6 order, the portion of which denied Manda the right to file a fee petition. And Manda's request on that day to the trial court was to file a fee petition for work performed in responding to the section 2-1401 petition:

> "THE COURT:  You are asking me for additional attorney's fees based on this 1401 petition?
>
> COUNSEL:  On responding to this, yes."

¶ 25    Moreover, even had she intended to do so, Manda could not have bootstrapped her fees from the earlier "motion to vacate" litigation onto the section 2-1401 litigation, because they were different actions altogether. The filing of a section 2-1401 petition, though a collateral attack on a previous judgment, "commences a new and separate cause of action." *Price v. Philip Morris, Inc.*, 2015 IL 117687, ¶ 23; see also *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31 (section 2-1401 proceeding is "independent and separate action from the original action"). Thus, any fee petition that Manda could have filed in the section 2-1401 proceeding could only have been brought for effort expended with regard to that proceeding.

¶ 26    It is not clear what became of that fee petition filed with regard to the litigation on the "motion to vacate." As we explained previously (see *supra* ¶¶ 9-10), Manda says the circuit court denied that fee petition when it denied the "motion to vacate" itself, but that assertion finds no

support in the record, and we cannot accept that assertion without a stipulation or record evidence. *Keener v. City of Herrin*, 235 Ill. 2d 338, 346 (2009). But it ultimately makes no difference here. Whatever became of that fee petition, it was not a subject of the August 6 order, and the August 6 order is the only trial court ruling before us on this cross-appeal.

¶ 27    Thus, our review is limited to Manda's request for attorney fees and costs arising from her efforts in opposing the landlords' section 2-1401 petition, a request which the circuit court denied on August 6, 2014.

¶ 28         B. Right to Fees and Costs for Litigating Section 2-1401 Petition

¶ 29    The RLTO permits a prevailing plaintiff to collect attorney fees in certain landlord-tenant actions:

> "Except in cases of forcible entry and detainer actions, the prevailing plaintiff in any action arising out of a landlord's or tenant's application of the rights or remedies made available in this ordinance shall be entitled to all court costs and reasonable attorney's fees***." Chicago Municipal Code § 5-12-180 (added Nov. 6, 1991).

¶ 30    There is no question that, when a tenant sues for a violation of RLTO and prevails, that tenant is entitled to reasonable attorney fees and all court costs related to that action. The question here is whether that fee-shifting provision applies to a postjudgment petition, brought under section 2-1401, attacking that result. It is a question of law we review *de novo*. *Shadid v. Sims*, 2015 IL App (1st) 141973, ¶ 7 (whether RLTO provides for fee award in certain situation is question of law reviewed *de novo*); *Grate v. Grzetich*, 373 Ill. App. 3d 228, 231 (2007) (whether statute authorizes award of attorney fees is question of law subject to *de novo* review).

¶ 31    We start, as we must, by ascertaining the intent of the legislative body in adopting the ordinance regarding attorney fees. *Shadid*, 2015 IL App (1st) 141973, ¶ 7. We do this, first and

foremost, by giving the language its plain and ordinary meaning and considering the statutory framework as a whole. *Id.*

¶ 32    The fee-shifting provision in the RLTO applies to "any action arising out of a landlord's or tenant's application of the rights or remedies made available in this ordinance." Chicago Municipal Code § 5-12-180 (added Nov. 6, 1991). The scope of this provision includes the initial lawsuit Manda filed here, but does it also include the section 2-1401 petition filed by the landlords to collaterally attack that judgment? As we have just noted, a section 2-1401 petition is not a continuation of that same proceeding but, rather, is a new and separate cause of action attacking the judgment in that initial action. *Price*, 2015 IL 117687, ¶ 23; *Walters*, 2015 IL 117783, ¶ 31. And recall that the RLTO does not provide for the award of fees to a prevailing *party*; it awards them to a "prevailing *plaintiff*." (Emphasis added.) Chicago Municipal Code § 5-12-180 (added Nov. 6, 1991). In this new and separate cause of action brought under section 2-1401, Manda was not the prevailing plaintiff; she was not the plaintiff at all. She was a prevailing *respondent*.

¶ 33    On the other hand, as we noted in *Shadid*, 2015 IL App (1st) 141973, ¶ 7, the RLTO also provides that it "shall be liberally construed and applied to promote its purposes and policies." Chicago Municipal Code § 5-12-010 (amended Mar. 31, 2004). And this court has often recognized that the overall purpose of the RLTO is " 'to protect tenants,' " with the understanding that " 'tenants are in a disadvantageous position with respect to landlords.' " *Shadid*, 2015 IL App (1st) 141973, ¶ 7 (quoting *Lawrence v. Regent Realty Group, Inc.*, 307 Ill. App. 3d 155, 160 (1999), *aff'd*, 197 Ill. 2d 1 (2001)).  More specifically, with regard to the fee-shifting provision under review, this court has recognized that:

  " 'The ordinance was passed with a recognition of the historical disparity in bargaining

    positions between landlord and tenants and to protect tenants from overreaching by

- 8 -

residential landlords. [Citation.] The attorney fees provisions are meant to give a financial incentive to attorneys to litigate on behalf of those clients who have meritorious cases but who, due to the limited nature of the controversy, would not normally consider litigation as being in their client's financial best interest.' " *Id*. ¶ 11 (quoting *Pitts v. Holt*, 304 Ill. App. 3d 871, 873 (1999)).[2]

¶ 34    Thus, for example, in *Shadid*, we held that the phrase "prevailing plaintiff" in this ordinance should be read to include a prevailing *counter*plaintiff, where the tenant brought a counterclaim under the RLTO and ultimately prevailed. *Id*. ¶ 8. We reasoned that there was no meaningful distinction between a complaint and a counterclaim other than the procedural posture in which the claim was raised, and denying fees to a prevailing counterplaintiff would do violence to the fundamental purpose of the fee-shifting provision—to allow tenants to vindicate their rights by incentivizing lawyers to take their cases. *Id*. ¶¶ 8-9.

¶ 35    We also take guidance from the related context of appellate fees in cases involving statutory fee-shifting provisions. Typically, where a party that prevails in the trial court is required to defend that victory on appeal, courts award attorney fees to that party for their work on the appeal, too, provided they prevail on appeal as they did at trial. For example, in *Chesrow*,

---

[2] We recognize that, generally speaking, statutes awarding attorney fees and costs to prevailing parties are strictly construed, as they are in derogation of the common-law principle that each side bears its own fees and costs. *Gonzales-Blanco v. Clayton*, 120 Ill. App. 3d 848, 850 (1983). But that principle yields to the plain language of the statute; where, as here, a statute specifically provides that its provisions are to be liberally construed to effectuate their purpose, our duty is to give effect to that expressed intent and disregard that general rule of statutory construction. *Chesrow v. Du Page Auto Brokers, Inc.*, 200 Ill. App. 3d 72, 76 (1990); *Warren v. LeMay*, 142 Ill. App. 3d 550, 583 (1986). Since the RLTO provides for a liberal construction, we are not required to strictly construe the attorney-fee provision.

200 Ill. App. 3d at 76, we held that the Consumer Fraud and Deceptive Business Practices Act allowed for an award of attorney fees on appeal, where the language of the statute provided for " 'reasonable attorney's fees and costs to the prevailing party' " and further provided that the statute be " 'liberally construed to effect the purposes thereof,' " namely the "statutory mandate to provide appropriate remedies to consumers." *Id.* (quoting Ill. Rev. Stat. 1989, ch. 121½, ¶¶ 270a(c), 271a). In a previous decision on which *Chesrow* relied, we explained our reasoning that this consumer fraud law allowed for attorney fees on appeal:

> "The language of [the statute] does not, by its own terms, restrict fees payable to those incurred at trial. In view of the statute's broad remedial purposes, we perceive that the intent of this provision is to compensate a prevailing party for *all* fees and costs reasonably incurred in connection with the claim brought pursuant to its terms. Where the claim must be litigated not only at trial, but also on appeal, then the attorney's fees and costs incurred by the prevailing party in connection with appellate proceedings must be deemed an integral part of that claim and should be recoverable under the statute." (Emphasis in original.) *Warren*, 142 Ill. App. 3d at 583.

¶ 36 We applied this reasoning in finding that the Magnuson-Moss Warranty-Federal Trade Commission Improvements Act (15 U.S.C. § 2301 *et seq.* (2006)) permitted an award of fees for appellate work. *Melton v. Frigidaire*, 346 Ill. App. 3d 331, 341 (2004). We reasoned that "[a]llowing a plaintiff to petition for appellate attorney fees and costs furthers the Act's goal of providing consumers with legal assistance to enable them to pursue a remedy for injury or loss." *Id*. *Melton* quoted a North Dakota decision that wrote, " 'We do not believe that a prevailing consumer's attorney-fee award *** should be dissipated by uncompensated costs, expenses and attorney fees in successfully defending a judgment on appeal.' " *Id*. (quoting *Troutman v. Pierce, Inc.*, 402 N.W.2d 920, 925 (N.D. 1987)).

¶ 37　We would further note that in federal civil rights litigation, courts award fees incurred by prevailing plaintiffs in defending their judgments both postjudgment and on appeal. See, *e.g.*, *Ustrak v. Fairman*, 851 F.2d 983, 990 (7th Cir. 1988) (plaintiff entitled to fee award for appellate work in defending successful judgment below; plaintiff "had no choice" but to incur them or forfeit his victory below); *Plyler v. Evatt*, 902 F.2d 273, 281 (4th Cir. 1990) (prevailing civil rights plaintiff entitled to fees in opposing defendant's posttrial motion to modify judgment; plaintiff's counsel sought "to preserve [the] fruits" of its victory and was "under clear obligation to make the defensive effort"; "[t]o deny attorneys fees for such an effort *** would obviously thwart the underlying purpose of the attorney fee provision" at issue).

¶ 38　The analogy to appellate work is not perfect. An appeal is clearly a continuation of the trial court proceeding in which a plaintiff prevailed. Here, on the other hand, the section 2-1401 petition was an independent, collateral action. But the reasoning of those decisions we have discussed applies with equal force to the scenario before us. In each case, the plaintiff has secured a victory before the trial court and is now required to defend that victory based on a legal maneuver initiated by the losing defendant, be it an appeal or a postjudgment collateral attack. In each case, that prevailing plaintiff is faced with the choice of opposing that legal maneuver or forfeiting the victory she gained in the trial court. And in each case, if attorney fees were not awarded for that prevailing plaintiff's subsequent legal work in defending her victory, she might lack the financial resources to engage a lawyer to continue litigating the case postjudgment.

¶ 39　Indeed, one could reasonably argue that the entire purpose behind the fee-shifting provision in the RLTO could be thwarted by a losing defendant, who could strategically choose to file a section 2-1401 petition rather than a direct appeal, and then appeal the ruling on the section 2-1401 petition, too. In the process of litigating the section 2-1401 petition in the circuit

and reviewing courts, the once-prevailing plaintiff could easily find herself spending more on attorney fees than she was awarded in the original action.

¶ 40   We believe that denying attorney fees to Manda in defending the section 2-1401 petition would lead to a result that is entirely incompatible with the purpose of the RLTO. The ordinance is intended to give tenants an incentive to pursue cases that otherwise would not be worth the cost of litigation, and lawyers an incentive to take those cases. The ordinance contemplates that a prevailing plaintiff will be awarded all reasonable attorney fees, and all court costs, for litigating that RLTO claim. A section 2-1401 petition, though technically a separate action, is still directed at that RLTO claim, and though the prevailing plaintiff has now become a prevailing respondent, she is the same person fighting to vindicate the same claim. It is clear to us, from the language and stated purpose of the RLTO, that it was the intent of the Chicago City Council that *any* litigation related to the RLTO action would fall within the confines of the fee-shifting provision, and that the City Council did not contemplate a legal maneuver that is technically removed from the initial action even though it directly challenges it.

¶ 41   " '[W]hen the literal enforcement of a statute would result in great injustice and lead to consequences which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended and will adopt a construction which it may be reasonable to presume was contemplated by the legislature.' " *In re Detention of Lieberman*, 201 Ill. 2d 300, 319 (2002) (quoting *People ex rel. Cason v. Ring,* 41 Ill.2d 305, 312-13 (1968)). In *Lieberman*, for example, the respondent challenged the State's attempt to commit him pursuant to the Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq.* (West 1998)), arguing that the definition of a "sexually violent person" did not include individuals such as the respondent, who had been previously convicted of rape; the definition included the modern moniker of "criminal sexual assault" but did not mention the now-abolished offense of "rape." *Id*.

- 12 -

at 310-11; 725 ILCS 207/5(e) (West 1998). Our supreme court rejected this argument, noting that the former crime of "rape" was wholly subsumed within the modern definition of "criminal sexual assault," and that permitting the respondent to avoid the reach of the civil commitment statute on this technical basis would constitute "an unwarranted triumph of form over substance, defeating the very purpose for which the statute was enacted." *Lieberman*, 201 Ill. 2d at 319.

¶ 42 That reasoning applies here. We read the scope of the fee-shifting provision, which applies to "any action arising out of a landlord's or tenant's application of the rights or remedies made available" under the RLTO (Chicago Municipal Code § 5-12-180 (added Nov. 6, 1991)), to include a section 2-1401 petition aimed at the judgment in that action. And even though Manda was not technically a plaintiff with regard to that action, denying fees and costs to Manda in opposing that section 2-1401 petition would constitute an unwarranted triumph of form over substance in interpreting the RLTO and would defeat the very purpose of its fee-shifting provision. We will not adopt that interpretation.

¶ 43 We hold that Manda is entitled to court costs and reasonable attorney fees under the RLTO for work performed in opposing the landlords' section 2-1401 petition.

¶ 44                                    C. Right to Fees Related to Cross-Appeal

¶ 45 Manda has also requested fees incurred in litigating this cross-appeal. Typically, where a statute provides for the award of attorney fees and costs in prosecuting an action, the cost of presenting and litigating the fee petition itself is likewise recoverable. See, *e.g.*, *ADT Security Services, Inc. v. Lisle-Woodridge Fire Protection District*, 86 F. Supp. 3d 857, 871 (N.D. Ill. 2015); *Bond v. Stanton,* 630 F.2d 1231, 1235 (7th Cir. 1980) ("[I]t would be inconsistent with the purpose of the [civil rights fee shifting statute] to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee." (quoting *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978)).

¶ 46    Given the reasoning of these cases and our previous analysis, and given a liberal construction of the ordinance's provision entitling Manda to "all courts costs and reasonable attorney's fees" (Chicago Municipal Code § 5-12-180 (added Nov. 6, 1991)), we hold that Manda is entitled to court costs and reasonable attorney fees for work performed in prosecuting this cross-appeal.

¶ 47    The proper course is to remand these claims for court costs and attorney fees to the circuit court for its initial review. See *Erlenbush v. Largent*, 353 Ill. App. 3d 949, 953 (2004); *Melton*, 346 Ill. App. 3d at 341; *City National Bank of Murphysboro v. Reiman*, 236 Ill. App. 3d 1080, 1095-96 (1992); *American Savings Ass. v. Conrath*, 123 Ill. App. 3d 140, 147 (1984).

¶ 48                                   III. CONCLUSION

¶ 49    We reverse only that portion of the circuit court's August 6, 2014 order that denied Manda the right to file a fee petition. On remand, the circuit court shall permit Manda to file petitions for court costs and reasonable attorney fees for work performed on the landlords' section 2-1401 petition and on this cross-appeal.

¶ 50    Reversed and remanded with instructions.