2022 IL App (1st) 210177-U

FIFTH DIVISION
April 29, 2022

No. 1-21-0177

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| STERLING REYNOLDS, | ) | Appeal from the |
| | ) | Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | Case No. 19 M1 111441 |
| | ) | |
| THANH PHAN, | ) | Honorable Judge Lloyd J. Brooks |
| | ) | and Honorable Scott McKenna |
| Defendant-Appellant. | ) | Judges, Presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

¶ 1      *Held:*  The circuit court did not err when it granted plaintiff's motion for summary judgment on counts I and II and awarded him attorney fees and costs; and when it granted defendant's motion for summary judgment on count III; affirmed and remanded with instructions.

¶ 2      Plaintiff, Sterling Reynolds, filed a complaint against his landlord, defendant Thanh Phan, alleging that defendant violated the Residential Landlord and Tenant Ordinance (Chicago Municipal Code § 5-12) (RLTO) on a number of grounds. The circuit court granted plaintiff's motion for summary judgment on two counts of the complaint and subsequently awarded him attorney fees and costs as the prevailing party under the RLTO. Defendant now appeals from the circuit court's orders that granted plaintiff's motion for summary judgment and awarded him

attorney fees and costs. Defendant argues the court erred because the RLTO did not apply to the building at issue, as it was owner-occupied with more than six dwelling units. Plaintiff filed a cross-appeal arguing that the circuit court erred when it granted summary judgment to defendant on one count in his complaint. We affirm and remand the matter to the circuit court for the sole purpose of allowing plaintiff to file a petition for court costs and reasonable attorney fees for the work performed on this appeal.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant owned an apartment building at 4720 North Monticello that consisted of three apartments on three floors plus a basement apartment. Plaintiff entered into a written lease with defendant for the middle room on the second floor, for a term beginning October 1, 2017, and ending September 30, 2018. Plaintiff paid defendant a $650 security deposit and monthly rent of $650 pursuant to the lease. Plaintiff vacated the room on September 30, 2018. Thereafter, plaintiff filed a three-count complaint against defendant based on violations of the RLTO.

¶ 5        Before we turn to plaintiff's complaint, we note that the RLTO "applies to, regulates and determines rights, obligations and remedies under every rental agreement for a dwelling unit located within the City of Chicago***subject only to the limitations contained in Section 5-12-020." Chicago Municipal Code § 5-12-010 (amended Mar. 31, 2004). Section 5-12-020 provides a list of dwelling units that are not governed by the RLTO, including, as relevant here, "[d]welling units in owner-occupied premises containing six units or fewer." Chicago Municipal Code § 5-12-010 (amended July 22, 2020).

¶ 6                                Plaintiff's Complaint

¶ 7        Plaintiff filed a three-count complaint against defendant based on violations of the RLTO. Plaintiff alleged that the RLTO applied because his lease was for a bedroom in a multi-

unit apartment building and defendant did not live in the building. In count I, plaintiff alleged that defendant violated section 5-12-170 of the RLTO because he failed to give plaintiff a summary of the RLTO (Chicago Municipal Code § 5-12-170 (amended Nov. 14, 2018)). He stated that under the RLTO defendant owed him $100 for the violation.

¶ 8 In count II, plaintiff alleged that defendant violated several provisions in section 5-12-080 of the RLTO (Chicago Municipal Code § 5-12-080 (amended July 28, 2010)) relating to the security deposit, including, among other things, defendant did not provide him with the name and address of the financial institution where the security deposit was being held, defendant held the security deposit in an account with defendant's own assets, and defendant did not send him a list of alleged damages with receipts for repair or replacement costs or return his full security deposit within the time set forth in the RLTO. Under section 5-12-080(f) of the RLTO, the remedy for the violations was an award for twice the amount of the security deposit and he was entitled to reasonable attorney fees.

¶ 9 In count III, which was entitled "[m]oney had and received/restitution/breach of contract," plaintiff alleged that pursuant to section 5-12-080(d) of the RLTO, the lease, and "[e]quity and good conscience," defendant was required to return the security deposit to him. Section 5-12-080(d) sets forth the requirements regarding the return of the security deposit. Chicago Municipal Code § 5-12-080(d) (amended July 28, 2010).

¶ 10 Plaintiff's Motion for Summary Judgment

¶ 11 Following discovery, plaintiff filed a motion for summary judgment and argued he was entitled to summary judgment on counts I and II. He asserted that the RLTO applied because defendant divided the building into at least eight dwelling units. Plaintiff asserted that the first floor was unoccupied, and defendant rented three individual rooms to separate tenants with

separate leases on both the second and third floors. Plaintiff attached to his motion defendant's answers to plaintiff's interrogatories, in which defendant stated that he occupied the basement apartment and also listed the names of six different tenants with their lease terms and their corresponding rooms and apartments in the building.

¶ 12      As for count I, plaintiff argued he was entitled to summary judgment because defendant violated section 5-12-170 of the RLTO (Chicago Municipal Code § 5-12-170 (amended Nov. 14, 2018)) when he did not provide him a summary of the RLTO, including the current interest rate. Plaintiff cited to and attached to his motion defendant's responses to plaintiff's requests to admit, in which defendant admitted he did not give plaintiff a copy of the current interest rate summary. Plaintiff asserted he was entitled to $100 for the violation and attorney fees under the RLTO.

¶ 13      As for count II, plaintiff argued he was entitled to summary judgment because defendant violated section 5-12-080 of the RLTO (Chicago Municipal Code § 5-12-080 (amended July 28, 2010)) on a number of grounds with respect to his $650 security deposit. He asserted that defendant did not provide him with a list of alleged damages within 30 days of the date he vacated the premises and did not return his full security deposit within 45 days as required by section 5-12-080(d). To support his argument, plaintiff cited defendant's answers to plaintiff's requests to admit, in which defendant admitted that plaintiff vacated the premises on September 30, 2018, and that plaintiff had paid all amounts due at that time. Plaintiff also attached an affidavit, in which he averred as follows. He left the premises in good condition and defendant did not send him a written list of alleged damages or any receipts for costs to repair or replace damages within 30 days from the date he vacated. On November 7, 2018, defendant mailed him a check for $50.07 for the return of the security deposit.

¶ 14 Plaintiff further argued that he was entitled to summary judgment on count II because defendant failed to timely notify him that his security deposit had been transferred from one financial institution to another during the lease term in violation of section 5-12-080(a)(3). To support his argument, he attached and cited to a document entitled "Security Deposit Receipt" as well as defendant's answers to plaintiff's interrogatories. The document entitled "Security Deposit Receipt," which had been produced during discovery, was signed by defendant on October 1, 2017, and stated that defendant received a $650 security deposit from plaintiff and that Chase Bank was the name of the financial institution where the funds were to be held. In defendant's answers to plaintiff's interrogatories, defendant stated that U.S. Bank was the name of the financial institution where the security deposit "has been or is held." Plaintiff argued that defendant never notified him that the security deposit had been transferred from Chase Bank to U.S. Bank as required by the RLTO. Plaintiff further argued that defendant commingled the security deposit with defendant's own assets in violation of section 5-12-080(a)(1), as his answers to the interrogatories showed that he deposited plaintiff's rent check into the same U.S. Bank account where the security deposit was being held. Plaintiff asserted that under section 5-12-080(f), he was entitled to recover two times the amount of his security deposit and attorney fees for defendant's violations of section 5-12-080.

¶ 15 Defendant's Response to Plaintiff's Motion for Summary Judgment and

Cross-Motion for Summary Judgment

¶ 16 In response, defendant argued that the RLTO did not apply because the building was owner-occupied with less than six dwelling units. Defendant stated that the building had only four dwelling units, which included three apartments and the basement unit. He asserted that it was undisputed that he lived in the basement apartment. To support his argument, he referred to his answers to plaintiff's interrogatories and his affidavit he attached to his response, in which he

stated that he lived in the basement apartment during the term of the lease. As for the three other apartments in the building, he stated as follows. The first floor apartment was unoccupied because it was being renovated. He rented the second and third floor apartments on a "bedroom-by-bedroom basis" where each tenant had a designated bedroom and could use the common areas, which included the kitchen, living/dining room, and bathroom. The building had a total of eight bedrooms, and he rented these bedrooms to separate individuals as part of a co-living arrangement. Plaintiff's lease was for the middle bedroom on the second floor and provided that plaintiff rented "1 bedroom of a 3 bedroom apartment." The lease contained references to a common area cleaning schedule.

¶ 17    Defendant argued that each bedroom was not considered a "dwelling unit" under the RLTO. He stated that the RLTO defined "dwelling unit" as "part of a structure" that is "used by one or more persons who maintain a household." He argued that each apartment was a self-contained household and that, although each tenant had a specific bedroom, a bedroom was not considered a "dwelling unit." Defendant argued that because the RLTO did not apply, he was entitled to summary judgment on counts I and II, which were based solely on the RLTO.

¶ 18    As for count III of plaintiff's complaint, defendant argued he was entitled to summary judgment because plaintiff sought the return of the security deposit based on "equity and good conscience" but did not plead any equitable claims. He asserted that to the extent count III was based on a breach of contract claim regarding the security deposit, he did not breach the contract, as he mailed plaintiff a check for $50.07 for the security deposit, along with an itemized explanation for the deductions. Attached to defendant's response brief was his affidavit, in which he averred, among other things, that on November 7, 2018, he mailed plaintiff a check for $50.07, with an itemized explanation for why he withheld $600. Defendant also attached a document dated

October 30, 2018, addressed to plaintiff and signed by defendant that stated that defendant was returning $50.07 to plaintiff, which was based on adding $.07 in interest to the $650 security deposit and then deducting $325 for cleaning the apartment due to smoke and $275 for painting the room.

¶ 19　　　　Plaintiff's Reply and Response to Defendant's Cross-Motion for Summary Judgment

¶ 20　　　　In plaintiff's reply, he stated that the court need not address the issue of whether defendant lived in the building because there was no question of fact that the building had more than six individual rental units. He asserted that defendant admitted he rented each of the three individual bedrooms on the second and third floors on a room-by-room basis and that defendant lived in the basement. He stated that the other tenants were strangers, he could not choose the other tenants, each tenant of each bedroom had their own individual lease, the tenants paid rent and security deposits separately from each other, and the bedrooms had padlocks on them such that he was excluded from the other rooms. He attached an affidavit in which he averred that defendant converted each floor of the apartment to three separate rental spaces and each separate rental space had a door with a padlock. He also stated in the affidavit that before he moved in, he did not know any of the other tenants, he was not related to any of the other tenants, the other tenants were neighbors, he did not consider the other tenants to be part of his household.

¶ 21　　　　As for count III, plaintiff did not respond to defendant's argument that defendant was entitled to judgment on this count.

¶ 22　　　　　　　　　　　　　　　Circuit Court's Ruling

¶ 23　　　　In a written ruling, the court concluded that the RLTO applied to defendant's arrangement with his tenants. In doing so, the court referred to the definition of "dwelling unit" in the RLTO, which defines it as "[a] structure or the part of a structure that is used as a home

residence, or sleeping place by one or more persons who maintain a household, together with the common areas, land and appurtenant buildings thereto." Chicago Municipal Ordinance § 5-12-030(a) (amended July 22, 2020)). The court concluded that there were at least eight dwelling units in the building, noting that each tenant leased a separate bedroom and resided within the apartment separate from each other, not as a household. The court stated that the kitchen, bathroom, and living room were common areas that each tenant was allowed to use.

¶ 24    The court stated that defendant did not provide any evidence that he complied with the requirements of the RLTO, and it awarded summary judgment in favor of plaintiff on counts I[1] and II.[2] As for damages, the court concluded that plaintiff was entitled to $100 for count I and two times the amount of the security deposit ($1,300) under section 5-12-080(f) of the RLTO for count II. With respect to count III and plaintiff's request for return of the security deposit, the court stated that plaintiff did not seek judgment on that count, that defendant asserted he complied with his contractual duties regarding the security deposit, and that there was a material issue of fact as to that count.

¶ 25                    Plaintiff's Petition for Attorney Fees

¶ 26    Plaintiff argued that he was entitled to attorney fees and costs as the prevailing party under section 5-12-180 of the RLTO (Chicago Municipal Code § 5-12-180 (amended Nov. 6, 1991)). Plaintiff requested $14,157.50 in attorney fees and $410.01 in costs. Attached to his petition was an affidavit from plaintiff's counsel with a billing summary as well as an affidavit from another attorney attesting to the reasonableness of the fees sought. In defendant's objections

---

[1] Count I was based on defendant violating section 5-12-170 by failing to give plaintiff the RLTO summary. Defendant concedes on appeal that he failed to provide plaintiff with the proper RLTO summary.
[2] Count II was based on violations of the various subsections contained in section 5-12-080, but the court did not conclude or make any findings regarding which subsection in section 5-12-080 defendant violated. As described below, on appeal, defendant concedes he violated subsection 5-12-080(a)(3) by not identifying in the lease the financial institution at which defendant kept plaintiff's security deposit.

to plaintiff's fee petition, he acknowledged that the RLTO contained a provision that entitled a prevailing party to reasonable attorney fees. He argued however that plaintiff's fee petition contained excessive hours and rates. Defendant also requested the court enter either an Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) finding on counts I and II or a final judgment on count III.

¶ 27         Circuit Court's Order on Plaintiff's Petition for Attorney Fees and Costs

¶ 28         In a written order, the circuit court[3] awarded plaintiff $12,580 in attorney fees and $410.01 in costs, noting that plaintiff was the prevailing party on counts I and II. The court found that plaintiff's counsel's hourly rates were customary and reasonable. It concluded however that certain charges were excessive or unreasonable and it reduced the fees accordingly, with a list of fees reduced.

¶ 29         As for defendant's request for a final judgment on count III, the court concluded that the damages sought in count III were already addressed when the court awarded him twice the amount of the security deposit on count II for the RLTO violation. The court stated: "As Count III appears to seek a common law equitable remedy for the return of the security deposit, when statutory damages have already been awarded for the same conduct in Count II, any further litigation with respect to Count III would be duplicative and unnecessary, and any further judgment on Count III would result in double recovery to Plaintiff." The court therefore granted summary judgment to defendant on count III. This appeal followed.

¶ 30                                 II. ANALYSIS

---

[3] The trial court judge who issued the order on the fee petition was not the same judge who issued the order on plaintiff's motion for summary judgment.

¶ 31    On appeal, defendant contends that the circuit court erred when it granted summary judgment to plaintiff on counts I and II. He argues that the RLTO did not apply to the parties' rental agreement because the three-flat apartment building had less than six dwelling units.

¶ 32    We review a circuit court's ruling on a motion for summary judgment *de novo*. *Clark Investments, Inc. v. Airstream, Inc.*, 399 Ill. App. 3d 209, 213 (2010). A circuit court may properly grant summary judgment where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). To determine whether there is a genuine issue of material fact, "the court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the nonmovant." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 131-32 (1992). "While we must view evidence in the light most favorable to a nonmovant, we cannot simply ignore evidence unfavorable to the nonmovant." *Yacko v. Curtis*, 339 Ill. App. 3d 299, 302 (2003). We may affirm a grant of summary judgment on any basis appearing in the record. *Home Insurance Co. v. Cincinnati Insurance Co.,* 213 Ill. 2d 307, 315 (2004).

¶ 33    Here, the issue is whether the RLTO governed defendant's rental arrangement in his three-flat building whereby he rented the individual bedrooms on the second and third floors to separate tenants with separate leases. As previously stated, under section 5-12-020(a) of the RLTO, "[d]welling units in owner-occupied premises containing six units or fewer" are not governed by the RLTO. Chicago Municipal Code § 5-12-030(a) (amended July 22, 2020). Defendant argues that the building had less than six dwelling units, which included three apartments and one basement. He asserts that the bedrooms he rented in the apartments were not considered "dwelling units" under the RLTO. Plaintiff, on the other hand, argues that the building had more than six

dwelling units because each bedroom on the second and third floors were rented to different tenants with separate leases such that each bedroom was a dwelling unit. The circuit court concluded that the RLTO applied because the building had at least eight dwelling units, noting that each tenant leased a separate bedroom and resided within the apartment separate from each other, not as a household.

¶ 34　　　We review the interpretation of an ordinance *de novo*. *Shadid v. Sims,* 2015 IL App (1st) 141973, ¶ 7. When a court interprets an ordinance, it must "ascertain and give effect to the drafter's intent." *Palm v. 2800 Lake Shore Drive Condominium Association*, 2013 IL 110505, ¶ 48. "Our inquiry begins with the language of the statute, but it also entails consideration of 'the reason and the necessity of the law, the evils to be remedied, and the objects and purposes to be obtained.' " *Meyer v. Cohen*, 260 Ill. App. 3d 351, 356 (1993) (quoting *People v. Garrett* 136 Ill.2d 318, 329, 144 (1990)). The best indication of the legislature's intent is the language of the ordinance, given its plain and ordinary meaning. *Shadid,* 2015 IL App (1st) 141973, ¶ 7.

¶ 35　　　The language of the RLTO states that it "shall be liberally construed and applied to promote its purposes and policies." Chicago Municipal Code § 5-12-010 (amended Mar. 31, 2004); see *Shadid,* 2015 IL App (1st) 141973, ¶ 7. The RLTO expressly states the purpose for enacting the ordinance as follows: "in order to protect and promote the public health, safety and welfare of its citizens, to establish the rights and obligations of the landlord and the tenant in the rental of dwelling units, and to encourage the landlord and the tenant to maintain and improve the quality of housing." Chicago Municipal Code § 5-12-010 (amended Mar. 31, 2004). This court has stated that "[o]ne clear purpose of the ordinance is to protect tenants" which is "rooted in the public policy that recognizes that tenants are in a disadvantageous position with respect to landlords." *Lawrence v. Regent Realty Group, Inc.*, 307 Ill. App. 3d 155, 160 (1999).

¶ 36     As previously stated, the RLTO "applies to, regulates and determines rights, obligations and remedies under *every rental agreement for a dwelling unit* located within the City of Chicago\*\*\* subject only to the limitations contained in Section 5-12-020." (Emphasis added.) Chicago Municipal Code § 5-12-010 (amended Mar. 31, 2004). Under section 5-12-020, the RLTO does not govern "[d]welling units in owner-occupied premises containing six units or fewer." Chicago Municipal Code § 5-12-020 (amended July 22, 2020). Turning to the definitions of rental agreement and dwelling unit, the RLTO defines "rental agreement" as "all written or oral agreements embodying the terms and conditions concerning the use and occupancy of a dwelling unit by a tenant." Chicago Municipal Ordinance § 5-12-030 (amended July 22, 2020). The RLTO defines "dwelling unit" as follows:

> "Dwelling unit means a structure or the part of a structure that is used as a home, residence or sleeping place by one or more persons who maintain a household, together with the common areas, land and appurtenant buildings thereto, and all housing services, privileges, furnishings and facilities supplied in connection with the use or occupancy thereof, including garage and parking facilities." Chicago Municipal Code § 5-12-030(a) (amended July 22, 2020).

The term "household" is not defined in the RLTO, so we may look within the Chicago Municipal Code for assistance. See *Allen v. Lin*, 356 Ill. App. 3d 405, 412 (2005) (the term "building" was not defined in the RLTO, so the court stated it "would look further within the Chicago Municipal Code for some assistance"). The Chicago Zoning Ordinance in the Chicago Municipal Code defines household as follows:

> "One or more persons related by blood, marriage, legal adoption or guardianship, plus not more than 3 additional persons, all of whom live together as a single housekeeping unit;

or one or more handicapped persons, as defined in the Fair Housing Amendments Act of 1988, plus not more than 3 additional persons, all of whom live together as a single housekeeping unit." Chicago Municipal Ordinance § 17-17-0270 (amended Dec. 16, 2020).

¶ 37        Applying the principles above and after reviewing the plain language of the statute, we find that the RLTO governs the parties' rental agreement because the building contained more than six dwelling units. The record shows, and the parties do not dispute, that defendant rented the individual bedrooms on the second and floor apartments to separate unrelated individuals with separate leases. The parties' lease expressly stated that it was "a sublease for 1 bedroom in a 3 bedroom apartment." In defendant's answers to plaintiff's interrogatories, he provided the names of six tenants and the dates of their tenancies and respective rooms and apartments in which they occupied. Further, plaintiff averred in his affidavit attached to his motion for summary judgment and asserts on appeal, and defendant does not dispute, that the tenants were unrelated, and each separate bedroom had a door with a padlock. Thus, defendant rented each bedroom to separate tenants and each tenant had a separate rental agreement and occupied their respective bedroom to the exclusion of others. See Chicago Municipal Code § 5-12-030(i) (amended July 22, 2020) ("tenant" is defined in the RLTO as "[a] person entitled by written or oral agreement, subtenancy approved by the landlord or by sufferance, to occupy a dwelling unit to the exclusion of others"). Under this rental arrangement, we find that each bedroom was its own dwelling unit, or a structure that could be used as a home, residence or sleeping place by one or more persons who maintain a household. The separate unrelated tenants renting the individual bedrooms did not maintain a household together and did not live as single housekeeping unit such that the apartment floor could

be considered the dwelling unit. Thus, the building had more than six dwelling units and the RLTO applied to the parties' rental agreement.

¶ 38    We note that the RLTO provides that dwelling units excluded from the RLTO include dwelling units in "roominghouses and boardinghouses, but only until such time as the dwelling unit has been occupied by a tenant for 32 or more continuous days and tenant pays a monthly rent, exclusive of any period of wrongful occupancy contrary to agreement with an owner." Chicago Municipal Ordinance § 5-12-020(b) (amended July 22, 2020). Thus, the RLTO provides that rooming houses occupied by a tenant for more than 32 consecutive days are not excluded from the RLTO. In Dictionary.com, the word "rooming house" is defined as "a house with furnished rooms to rent; lodging house." dictionary.com/browse/rooming-house (last visited April 7, 2022); See *Thornley v. Board of Trustees of River Forest Police Pension Fund*, 2022 IL App (1st) 210835, ¶ 18 (the court referred to Dictionary.com to define words in a statute and noted that courts have frequently relied on Dictionary.com when interpretating statutes). Accordingly, the provision regarding when rooming houses are not excluded from the RLTO supports the conclusion that the RLTO applies to the situation here, where plaintiff and the other tenants rented rooms in the apartments with lease terms ranging from seven months to over one year.

¶ 39    Defendant asserts that he submitted conclusive evidence during the briefing on the motion for summary judgment that he lived in the building. Plaintiff responds that whether defendant lived in the building is a question of material fact and the circuit court made no finding on the issue. Given our conclusion that the RLTO governed the parties' lease because it had more than six dwelling units, we need not address the issue regarding whether the building was owner-occupied. See Chicago Municipal Ordinance § 5-12-020(a) (amended July 22, 2020) ("[d]welling units in owner-occupied premises containing six units or fewer" are not governed by the RLTO).

¶ 40    In addition, we note that defendant concedes that he violated the RLTO, as he asserts that the facts showed that he failed to give plaintiff the proper RLTO summary in violation of section 5-12-170 (count I) and did not identify in the lease the financial institution at which he kept plaintiff's security deposit in violation of 5-12-080(a)(3) (count II).[4] Further, as for count I, under section 5-12-170, "[i]f a tenant in a civil legal proceeding against his landlord establishes that a violation of this section has occurred, he shall be entitled to recover $100.00 in damages." Chicago Municipal Ordinance § 5-12-170 (amended Nov. 14, 2018). As for count II, under subsection 5-12-080(f), if a defendant violates any provision in section 5-12-080(a)-(e), as here, the tenant shall be awarded damages in an amount equal to two times the security deposit plus interest. Chicago Municipal Ordinance § 5-12-080(f) (amended July 28, 2010). Thus, because the RLTO governed the parties' rental agreement and because defendant violated the RLTO, the court properly awarded summary judgment to plaintiff on counts I and II.

¶ 41                    Attorney Fees and Costs

¶ 42    Defendant correctly acknowledges that under the RLTO, a prevailing plaintiff is entitled to all court costs and reasonable attorney fees. Section 5-12-180 of the RLTO states that "[e]xcept in cases of forcible entry and detainer actions, the prevailing plaintiff in any action arising out of a landlord's or tenant's application of the rights or remedies made available in this ordinance shall be entitled to all court costs and reasonable attorney's fees." Chicago Municipal Ordinance § 5-12-180 (amended Nov. 6, 1991). Thus, there is no question that a prevailing plaintiff in a case based on violations of the RLTO is entitled to reasonable attorney fees and costs related to that action. *Trutin v. Adam*, 2016 IL App (1st) 142853, ¶ 30. Defendant contends however that

---

[4] Defendant does not concede that he violated subsection 5-12-080(d) regarding the requirements for the return of the security deposit.

the amount of fees the circuit court awarded to plaintiff was excessive given that his violations of the RLTO were "technical" and did not affect plaintiff's occupancy or enjoyment of the premises.

¶ 43    It is within the trial court's discretion to award attorney fees, and we will not reverse that ruling absent an abuse of discretion. *Pitts v. Holt*, 304 Ill. App. 3d 871, 872 (1999). Thus, we will reverse the trial court's award of attorney fees only if no reasonable person would make the same decision. *Shoreline Towers Condominium Association v. Gassman*, 404 Ill. App. 3d 1013, 1024 (2010). In determining the proper amount, courts consider various factors, including the skill and standing of the attorney employed, the nature of the case, the degree of responsibility required, the usual and customary charges for the same or similar services in the community and the reasonable connection between the fee charged and the litigation. *Pitts*, 304 Ill. App. 3d at 872.

¶ 44    Here, plaintiff's petition requested $14,157.50 in attorney fees and $410.01 in costs. To his petition, he attached an affidavit from his counsel with a billing statement to support this request. In the court's written order, it stated it reviewed the docket, relevant pleadings, and the briefs. The court then concluded that plaintiff's rates were not beyond the bounds of normal in RLTO cases. The court also found that certain charges were excessive, and it specifically indicated which charges were excessive. The court reduced the fees accordingly and awarded plaintiff $12,580 in attorney fees and $410.01 in costs. From our review of the record and fee petition, we cannot find that the court abused its discretion.

¶ 45                    Plaintiff's Request for Fees on Appeal

¶ 46    Plaintiff argues that this court should award him attorney fees incurred in connection with this appeal. As previously discussed, the RLTO provides that "the prevailing plaintiff in any action arising out of a landlord's or tenant's application of the rights or remedies made available in this ordinance shall be entitled to all court costs and reasonable attorney's fees." Chicago

Municipal Code § 5-12-180 (added Nov. 6, 1991). In *Trutin v. Adam*, 2016 IL App (1st) 142853, ¶ 35, which involved a dispute based on the RLTO, the court found that the tenant was entitled to fees for work performed in opposing the landlords' section 2-1401 petition in the circuit court. *Id.* ¶ 43. In doing so, the court explained that in the context of appellate fees in cases involving statutory fee-shifting provisions, as here, "[t]ypically, where a party that prevails in the trial court is required to defend that victory on appeal, courts award attorney fees to that party for their work on the appeal, too, provided they prevail on appeal as they did at trial." *Id.* ¶ 35.  The court also stated that it was clear from the stated purpose of the RLTO that "it was the intent of the Chicago City Council that *any* litigation related to the RLTO action would fall within the confines of the fee-shifting provision, and that the City Council did not contemplate a legal maneuver that is technically removed from the initial action even though it directly challenges it." (Emphasis in original.) *Id.* ¶ 40.

¶ 47        Here, plaintiff has been required to defend on appeal the circuit court's order granting summary judgment in his favor on counts I and II, which were based on defendant's violations of the RLTO, as well as its award on his fee petition. Accordingly, we find that plaintiff is entitled to recover reasonable attorney fees and court costs for defending this appeal, as they relate to counts I and II, and the fee petition. See *id.* ¶¶ 45-46 (where the court awarded the appellee attorney fees and costs for work performed in prosecuting the cross-appeal, noting the "liberal construction of the ordinance's provision entitling [the plaintiff] to 'all court costs and reasonable attorney's fees' "). We therefore remand plaintiff's claim for appellate costs and attorney fees to the circuit court for plaintiff to file a petition for costs and reasonable attorney fees for the appellate work performed to defend the fee petition and summary judgment in his favor on counts I and II. See *id.* ¶¶ 47, 49

(this court remanded the matter to the circuit court so the plaintiff could file petitions for costs and reasonable attorney fees for work performed on appeal).

¶ 48                                    Plaintiff's Cross-Appeal on Count III

¶ 49        In plaintiff's cross-appeal, he contends that the circuit court erred when in its February 2, 2021, order it granted summary judgment in favor of defendant on count III and concluded that any damages awarded on count III would result in double recovery. Plaintiff states that in count III, he sought return of the security deposit under common law theories as a result of defendant's failure to comply with section 5-12-080(d) of the RLTO.

¶ 50        Plaintiff's motion for summary judgment asserted that he was entitled to judgment on counts I and II but did not address count III. In defendant's response to the motion, he argued he was entitled to judgment on count III. However, in plaintiff's reply to the motion for summary judgment, he did not respond to defendant's argument or provide any argument relating to count III. Thus, he has forfeited any such argument on appeal. See *Wells Fargo Bank, N.A. v. Maka*, 2017 IL App (1st) 153010, ¶ 24 ("It is well settled that a party that does not raise an issue in the trial court forfeits that issue and may not raise it for the first time on appeal.").

¶ 51        Nevertheless, even if we would find that plaintiff did not forfeit his argument, we would affirm summary judgment on count III. As previously stated, plaintiff contends that the court erred when it granted summary judgment in defendant's favor on count III and concluded that a return of the security deposit would be duplicative of the statutory damages awarded under section 5-12-080(f) in count II. We briefly address the damages awarded on count II. Plaintiff's motion for summary judgment on count II was based on defendant failing to timely return the security deposit (5-12-080(d)), failing to timely notify plaintiff of any transfer of the security deposit (5-12-080(a)(3)), and commingling plaintiff's security deposit (5-12-080(a)(1)). For damages in count

II, the court awarded plaintiff twice the amount of the security deposit pursuant to section 5-12-080(f), which states that if a "landlord fails to comply with any provision of Section 5-12-080(a) – (e), the tenant shall be awarded damages in an amount equal to two times the security deposit." Section 5-12-080(f) also states that "[t]his subsection does not preclude the tenant from recovering other damages to which he may be entitled under this chapter." Chicago Municipal Code § 5-12-080(f) (amended July 28, 2010).

¶ 52    Turning back to plaintiff's argument regarding count III, he argues the court erred when it concluded that the remedy for the return of the security deposit under count III was addressed with the statutory damages awarded under section 5-12-080(f) for count II and would result in double recovery. To support his argument, plaintiff cites *Solomon v. American National Bank and Trust* Co., 243 Ill. App. 3d 132, 137 (1993). We are unpersuaded by plaintiff's reliance on *Solomon*.

¶ 53    In *Solomon*, which involved a landlord tenant dispute based on the landlord failing to promptly return the security deposit under section 5-12-080(d) of the RLTO, this court stated that "[r]eading the ordinance as a whole, we conclude that the deposit is not included in the statutory damages available under subsection (f)." *Id.* at 137. Citing subsection 5-12-080(b) of the RLTO, the court then stated that "[w]e note that the ordinance provides for the return of the deposit *and* statutory damages where the landlord fails to issue a proper receipt to a tenant." (Emphasis in original.) *Id.* Subsection 5-12-080(b)(1) sets forth the requirements a landlord must follow with the security deposit receipt and states that the "[f]ailure to comply with this subsection shall entitle the tenant to immediate return of security deposit." Chicago Municipal Ordinance § 5-12-080(b)(1) (amended July 28, 2010). The court concluded that, "[a]s the ordinance does not expressly provide

for the return of the deposit in the situation presented on appeal," the "plaintiffs' recovery of the deposit itself is governed by state law or other local ordinances." *Id.* at 133-34, 137.

¶ 54    Here, plaintiff alleged in count III that defendant violated section 5-12-080(d), which is the provision relating to the requirements for the return of the security deposit, not the requirements regarding the receipt of the security deposit under 5-12-080(b)(1). Unlike section 5-12-080(b)(1), section 5-12-080(d) does not expressly provide for the return of the deposit. See *id.* Plaintiff does not cite a provision in the RLTO or a state law under which he is entitled to the return of the security deposit in addition to the statutory damages under section 5-12-080(f) for defendant's alleged violation of section 5-12-080(d). Accordingly, we affirm the circuit court's order granting summary judgment in favor of defendant on count III.

¶ 55                                      III. CONCLUSION

¶ 56    Based on the foregoing, we affirm the circuit court's orders that granted plaintiff's motion for summary judgment on counts I and II, awarded plaintiff attorney fees and costs, and granted defendant's motion for summary judgment on count III. We remand the matter to the circuit court for the purpose of allowing plaintiff to file a petition for court costs and reasonable attorney fees for the work performed on this appeal.

¶ 57    Affirmed and remanded with directions.